IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PROGRESS RAIL SERVICES CORP. | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 2:07-CV-509-MEF |
| | * | |
| GEORGIA SOUTHWESTERN | * | |
| RAILROAD INC., | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT

Comes now the plaintiff in the above-styled cause, by and through its attorney of record, and for a complaint against the aforementioned defendants hereby incorporates an Affidavit of Account, with supporting exhibits attached thereto and states as follows:

### JURISDICTION & VENUE

1. The plaintiff, Progress Rail Services Corporation ("Progress Rail"), is an Alabama corporation and was authorized to do business in Alabama at all material times hereto.

2. Defendant Georgia Southwestern Railroad, Inc. ("Georgia Southern") is a Georgia corporation doing business in Barbour County, Alabama, at all times material hereto.

3. Progress Rail seeks damages against this Defendant for more than $75,000.

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1332.

### FACTS

5. Progress Rail and Georgia Southern entered into a contract on or about March 1, 2002 for Progress Rail to repair, manage, and maintain defendant's equipment. Progress Rail has

1

fulfilled its obligations under the contract by repairing, managing, and maintaining defendant's equipment. A statement of account, the contract, and supporting documentation of breach of said contract for failure to pay for said services are incorporated by way of affidavit attached hereto (Exhibit "A").

## COUNT I

6. Defendant owes the plaintiff $86,137.15 due by open account.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $86,137.15, attorneys fee plus interest and costs.

## COUNT II

7. Defendant owes the plaintiff $86,137.15 on an account stated between the plaintiff and the defendant from December 31, 2004 forward.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $86,137.15, attorneys fee plus interest and costs.

## COUNT III

8. Defendant owes plaintiff $86,137.15 for goods sold and delivered and services performed by plaintiff to defendant between December 31, 2004 through January 12, 2006.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $86,137.15, attorneys fee plus interest and costs.

## COUNT IV

9. Upon agreement of the parties, defendant promised to pay plaintiff for all goods sold and services performed by plaintiff to the benefit of the plaintiff.

10. Defendant breached the agreement by failing to pay for goods sold and delivered and services performed by plaintiff to defendant.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $86,137.15, attorneys fee plus interest and costs.

## COUNT V

11. Upon agreement of the parties, defendant promised to pay plaintiff for all goods sold and services performed by plaintiff to the benefit of the plaintiff.

12. Plaintiff performed services and delivered parts and other goods to defendant per that agreement without payment or other form of compensation.

13. As such, defendant has been unjustly enriched.

WHEREFORE, plaintiff demands judgment against defendant in the sum of $86,137.15, attorneys fee plus interest and costs.

```
FORREST S. LATTA        (LAT008)
JOHN P. BROWNING        (BRO220)
Attorneys for Plaintiff
```

OF COUNSEL:
BOWRON, LATTA & WASDEN, PC
Post Office Box 16046
Mobile, AL 36616

Defendant Georgia Southwestern Railroad, Inc. may be served by certified mail upon its registered agent for service of process, as follows:

CORPORATION PROCESS COMPANY
180 Cherokee Street NE
Marietta, GA 30060

## AFFIDAVIT OF ACCOUNT

STATE OF ALABAMA   )

COUNTY OF MARSHALL   )

Personally appeared before me, the undersigned authority in and for said county and state, GAY KERLIN, who is known to me, and who after being duly sworn did depose and say as follows:

"That she is Credit Manager for Progress Rail Services Corporation, a corporation doing business under the laws of the state of Alabama.

And that as such she makes this affidavit; that she is familiar with the books and business records of Progress Rail Services Corporation, that the attached account against Georgia Southwestern, Inc. is true, just and correct; that the attached contract for services is true, just and correct; and that there is now due and owing on said account the sum of $86,137.15 plus pre-judgment interest, attorneys fee and costs as allowed by contract and by law and as has been accrued since the first invoice claimed (December 31, 2004)."

FURTHER AFFIANT SAITH NOT.

_____
Gay Kerlin

Sworn to and subscribed before me this the 22nd day of March 2007.

_____
NOTARY PUBLIC
My Commission Expires: July 18, 2009

EXHIBIT
A

# ***GSWRR***
## **MAINTENANCE AGREEMENT**

THIS AGREEMENT ("Agreement") is dated as of <u>March 1, 2002</u> by and between Georgia Southwestern Railroad, Inc.("Railroad"), and Progress Rail Services Corporation ("Contractor").

Contractor engages in the business of repairing, managing and maintaining locomotives, and Railroad, which either owns or leases the locomotives described on any Schedule executed by both parties and attached hereto ("Locomotives") desires to retain Contractor as an independent contractor for the purpose of maintaining the Locomotives, all upon the terms and conditions set forth in this Agreement. The terms and provisions of each Schedule will control, as to the Locomotive on such Schedule, over any inconsistent or contrary terms and provisions in the body of this Agreement.

In consideration of the mutual promises made herein, Railroad and Contractor, intending to be legally bound, agree as follows:

1. **ENGAGEMENT OF CONTRACTOR.**

Subject to the terms and conditions set forth herein, Railroad engages Contractor as an independent contractor to maintain or provide Maintenance (as defined below) for the Locomotives. Contractor accepts such engagement and agrees to perform its duties in accordance with the terms and conditions hereof including, but not limited to, Schedule 2 attached hereto.

2. **TERM.**

a) This Agreement will commence as to each Locomotive on the date set forth on any Schedule and will continue until terminated in accordance with any Schedule or the occurrence of an Event of Default (as defined below).

b) This Agreement will automatically terminate with respect to any Locomotive that is lost, stolen, destroyed or irreparably damaged (in the opinion of the Railroad) on the date that such Locomotive is lost, stolen, destroyed or irreparably damaged.

3. **DUTIES OF CONTRACTOR.**

a) Unless the context shall otherwise require, the following terms shall have the following meanings for all purposes hereof:

"<u>Maintenance</u>" - all maintenance, repairs and work resulting from Ordinary Wear and Tear (as defined below) necessary to keep each Locomotive in good operating order, condition and repair, with all mechanical devices working, and in a manner consistent with maintenance practices at least equal to or better than those used

by other railroads on locomotives similar in type to the Locomotives and in accordance with customary railroad industry maintenance practices in existence from time to time, but no less than the practices required by lessor(s) of locomotives on the Railroad, including all actions (i) required for periodic maintenance tests, including 92 day, annual, biannual, tri-annual and main reservoir tests in accordance with 49 C.F.R. 229.23 as in effect from time to time, (ii) required for a daily inspection and test in accordance with C.F.R. 229.21 as in effect from time to time, (iii) in accordance with or required by all manufacturer's warranties, and (iv) required to comply with all applicable laws, rules and regulations, including the rules, regulations and recommended practices of the United States Department of Transportation ("DOT"), the Surface Transportation Board ("STB"), the Federal Railroad Administration ("FRA"), the Association of American Railroads ("AAR") Interchange Rules, and the Code of Federal Regulations ("C.F.R.").

"Ordinary Wear and Tear" - any maintenance, repairs and work required by Locomotives which are **not** caused by unfair usage as described in AAR Interchange Rule 95, abuse, negligence, vandalism, derailment or wreck.

"Damage" - any required maintenance, repairs or work (i) caused by unfair usage as defined in AAR Interchange Rule 95, or (ii) caused by other than Ordinary Wear and Tear.

b)   Contractor shall be responsible for and bears the costs of providing, repairing, replacing and maintaining components and materials necessary for Maintenance hereunder, including those items of ancillary equipment for which Contractor is designated as having responsibility. Contractor has the right to replace any locomotive component needing replacement with new, re-qualified, repaired or rebuilt components during the term hereof, subject to the provisions of contracts between Railroad and its locomotive lessor(s). Contractor shall use its best efforts to use the suppliers that Railroad has previously used; however, Contractor reserves the right to purchase components from other sources.

c)   Ownership of and title to any materials and components installed under this Agreement is vested in the Railroad immediately upon installation. Ownership of the removed part or component that is not reapplied to the Locomotive is vested in Contractor unless the repair is the Railroad's responsibility, in which case the part or component removed will be credited to the Railroad's account.

d)   Contractor will at its cost provide, procure, store and control all cleaning solutions, lubricants, oils, greases, other chemicals and petroleum products and all consumable maintenance parts used in the Maintenance of Locomotives with the exception of diesel fuel, which shall be for the account of the Railroad. Contractor will be responsible for compliance with all environmental laws, rules, regulations, or other governmental directives related to this Section, and shall hold Railroad harmless for any claims, damages, fines, penalties, or other costs or expenses related to Contractor's

12/27/2005 09:58 FAX                                      → Fees&Burgess            ☒004/014

actions with regards to this Section; should Railroad incur any costs or expenses related to this Section which are the responsibility of the Contractor, Contractor shall promptly reimburse Railroad.

e) Contractor shall, at its expense, cause to be performed all Maintenance to the Locomotives. Contractor shall, at Railroad's expense, as directed by Railroad, perform all maintenance, repairs and work to the Locomotives necessitated by Damage. Any such maintenance, repairs and work performed to the Locomotives by Contractor at Railroad's expense shall be at a labor rate of $50 per hour unless a different labor rate is mutually agreed upon in writing by the parties. Contractor will be given the *first opportunity* to provide an estimate to Railroad for its approval prior to performing any such maintenance, repairs and work at Railroad's expense. Railroad retains the right to seek additional bids for repair work necessitated by "Damage" and to award the work to the lowest bidder for comparable repairs.

f) In the event the U.S. Department of Transportation, or any other governmental agency or nongovernmental organization having jurisdiction over operation, safety or use of railroad equipment, requires that any Locomotive covered by this Agreement be modified or in any manner adjusted in order to qualify for operation in railroad service, and such modification or adjustment is not Maintenance, Railroad will be responsible to pay for such modifications or adjustments. In the event Railroad elects not to make such modification, or adjustments, this Agreement will be terminated as to such Locomotive.

g) In the event the DOT, the STB, the FRA, the AAR or any other governmental or nongovernmental organization having jurisdiction over the operation, safety or use of railroad equipment, or the Railroad, substantially change the Maintenance requirements related to the Locomotives, then Railroad shall grant Contractor an equitable adjustment in the Compensation paid to the Contractor. In the event Railroad and Contractor can not mutually agree to the amount of such equitable adjustment, this Agreement shall terminate without further obligation on the part of either party.

h) Railroad will give access to Contractor to Railroad's locomotive repair shop. The track over the inspection pit will be made available exclusively to Contractor for purposes of this Agreement, except to work necessitated by Damage covered by the provisions of paragraph "e" of this Section. Railroad's existing shop tools will be made available to Contractor at no charge. Contractor agrees not to alter or change the shop facility without Railroad's written consent.

i) Contractor guarantees that during each calendar quarter (i.e., January-March; April-June; July-September; and October-December) while this Agreement is in effect, the number of Locomotives that are available and fit for normal service at any time ("Serviceable Locomotives") must exceed at least ninety percent (90%) (rounded down to the nearest whole number) of the total number of Locomotives covered by this Agreement ("Minimum Serviceable Locomotives") [i.e., Agreement

currently covers 8 locomotives, 90% of which (rounded down) is 7]. The parties agree that, at the end of each calendar quarter, the number of hours (cumulative for the quarter in question) during which the Serviceable Locomotives is less than the Minimum Serviceable Locomotives (the "Shortfall") will be compensated by Contractor to Railroad at the rate of $8.34 per hour multiplied by the number of Locomotives in the Shortfall. (The $8.34 per hour equates to $200.00 per day per Locomotive). For example, if the number of Serviceable Locomotives in a given hour is 5 when the Minimum Serviceable Locomotives is 7, the charge for the hour will be $16.68 (i.e., a Shortfall of 2 Locomotives multiplied by $8.34 per hour). The parties acknowledge that this charge is a reasonable pre-estimate of the damages Railroad will incur in these circumstances and is not a penalty.

j) Contractor agrees to prepare and maintain reasonably detailed maintenance records, including all data sheets required under the Occupational, Safety and Health Act all for the term of this Agreement, and to deliver same to Railroad, at the termination of this Agreement. Railroad shall turn over to Contractor any and all maintenance safety data sheets concerning all products currently in use by Railroad. Contractor shall maintain in accordance with applicable laws, rules, and regulations the records and maintenance sheets in the Railroad's headquarters, and shall also maintain a posted visual record of the "Next Due" Inspection dates for each locomotive of Railroad.

### 4. COMPENSATION

As Compensation (defined in each Schedule) for the performance of Contractor's services during each calendar month ("Month") of this Agreement, Railroad will pay Contractor the amount set forth in the applicable Schedule to this Agreement.

Compensation paid to Contractor for Maintenance is the sole property of Contractor and is the total compensation due Contractor for Maintenance provided in accordance with this Agreement. Railroad will pay for or reimburse Contractor, as the case may be, for all Damage to Locomotives and all work described in Section 3(f) within thirty days of a demand for such payment or reimbursement. Notwithstanding the foregoing, the parties acknowledge and agree that Railroad will make available to Contractor certain inventory described in Exhibit A attached hereto for use in connection with services and materials to be provided hereunder by Contractor.

### 5. INDEMNIFICATION

As a material consideration to each party for entering into this Agreement, and without which neither party would enter into this Agreement, each party agrees as follows:

a) Contractor shall indemnify and hold harmless Railroad for all judgments, awards, claims, demands, and expenses (including attorney(s) fees), for injury or death to all persons, including Railroad's and Contractor's officers and employees, and

for loss and damage to property belonging to any person, arising in any manner from Contractor's or any of Contractor's subcontractor(s), agent(s), employee(s) or invitee(s) negligence, wrongful acts or omissions or failure to perform any obligation hereunder, except as otherwise specified in this Agreement or for which Railroad is liable under the AAR Interchange Rules.

        b)     Railroad shall indemnify and hold harmless Contractor for all judgments, awards, claims, demands, and expenses (including attorney(s) fees), for injury or death to all persons, including Contractor's and Railroad's officers and employees, and for loss and damage to property belonging to any person, arising in any manner from Railroad's or any Railroad's agent(s), or employee(s) negligence, wrongful acts or omissions or failure to perform any obligation hereunder, or arising from Railroad's operations.

        c)     The Contractor assumes all responsibility for loss of or damage to materials of the Railroad after delivery to and acceptance by the Contractor provided that such loss or damage is caused or contributed to by Contractor's, or subcontractor's, acts or omissions, and to materials and property of the Contractor used in the performance of the work until the work is accepted by Railroad, and shall indemnify, hold harmless and defend the Railroad from and against any liability for loss of or damage to the materials and property of any subcontractor used in the performance of the work, including tools, machinery, equipment, appliances, and supplies. Railroad agrees to cooperate in providing Contractor space to construct secure areas for the protection of its machinery, tools, and inventory.

        d.)     As promptly as practicable, after receipt by a party of notice of the commencement of any action, suit or proceeding or the assertion of any claim or loss with respect to which the other party (the "Indemnifying Party") is or may be required to indemnify, the indemnified party will give written notice thereof to the Indemnifying Party, whereupon the Indemnifying Party will undertake the defense and satisfaction thereof. The indemnified party will give the Indemnifying Party such cooperation as the Indemnifying Party may reasonably request, and the Indemnifying Party will have the right to defend and settle any such action, suit, proceeding or claim either in its name or the name of the indemnified party (so long as the indemnified party will be indemnified and held harmless as provided herein). The indemnified party will have the right, at its expense, to participate in the defense of any such action, suit, proceeding or claim. If the Indemnifying Party fails to take timely action to defend any such action, suit, proceeding or claim, the indemnified party will have the right to defend or settle the same as the indemnified party may deem appropriate at the Indemnifying Party's cost and expense.

        e.)    Except as specifically provided for herein, neither Contractor nor Railroad shall be liable to the other for any loss of profit or incidental or consequential damages relating to or connected with, directly or indirectly, a breach of this Agreement or any schedule.

Locomotive Maintenance Agreement, Final Version 10/10/02

      f.) It is mutually understood and agreed that the assumption of liabilities and indemnification provided for in this Agreement shall survive any termination of this Agreement.

### 6. INSURANCE

      a.) Before commencing any work under this Agreement, Contractor must provide and maintain in effect insurance, at Contractor's expense, covering all of the work and services to be performed hereunder by the Contractor and each of its subcontractors, as described below:

      1. Worker's Compensation coverage as is required by State law, but if optional under State law the insurance must cover all employees anyway. <u>THE CERTIFICATE MUST CONTAIN A SPECIFIC WAIVER OF THE INSURANCE COMPANY'S SUBROGATION RIGHTS AGAINST RAILROAD.</u>

      2. Railroad Protective Liability insurance stating Railroad as the Name Insured. Insurance coverage shall be at least $2,000,000. per occurrence and $6,000,000. in the aggregate.

      3. Automobile Liability Insurance, including bodily injury and property damage, with coverage of at least $1,000,000. combined single limit or the equivalent;

      4. Commercial General Liability Insurance, including Contractual Liability insurance, covering all liability assumed by the Contractor under the provisions of this Agreement, with coverage of at least $2,000,000. combined single limit or the equivalent.

      All insurance shall be placed with insurance companies licensed to do business in the States in which the work is to be performed, and with a current Best's Insurance Guide Rating of A and Class X, or better.

      The insurance must provide for coverage of incidents occurring within fifty (50) feet of a railroad track, and any provision to the contrary in the insurance policy must be specifically deleted.

      In cases of 3 and 4, the certificate must specifically state that "<u>RAILROAD IS NAMED AN ADDITIONAL INSURED PARTY</u>".

      Any coverage afforded Railroad, the Certificate Holder, as an Additional Insured shall apply as primary and not excess to any insurance issued in the name of Railroad.

      Before commencing any work hereunder, the Contractor shall furnish to the Railroad, Certificates of Insurance evidencing the issuance to the Contractor of the policies of insurance, providing the types of insurance and limits of liability prescribed above, and certifying that the Railroad shall be given not less than 30 days' written notice prior to any material change, substitution or cancellation prior to normal expiration dates.

Locomotive Maintenance Agreement, Final Version 10/10/02

Cancellation or expiration of any of said policies of insurance shall not preclude Railroad from recovery there under for any liability arising under this Agreement.

It is mutually understood and agreed that the purchase of insurance as herein provided shall not in any way limit the liability of the Contractor to Railroad, as herein set forth.

7. **DEFAULT.**

The occurrence of any of the following events will be an "Event of Default" under this Agreement:

    a)     The failure by either Contractor or Railroad to pay to the other any amount required to be paid hereunder if such amount is not paid within thirty days after such payment has become due.

    b)     The breach by either party of any other term, covenant, or condition of this Agreement, if such a breach is not cured within fifteen days after receipt of written notification of such breach.

    c)     A proceeding will have been instituted in a court seeking a decree or order (1) for relief in respect of Railroad or Contractor in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or (2) for the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official of Railroad or Contractor or for any substantial part of its property, or (3) for the winding up or liquidation of the affairs of Railroad or Contractor; and in any such case, either (a) any such proceeding will remain undismissed or unstayed and in effect for a period of sixty (60) consecutive days or (b) such court will enter a decree or order granting the relief sought in such proceeding.

    d)     Railroad or Contractor will commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, will consent to the entry of an order for relief in an involuntary case under any such law, or will consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of Railroad or Contractor or for any substantial part of its property, or will make a general assignment for the benefit of creditors, or will fail generally to pay its debts as they become due, or will take any corporate action in furtherance of any of the foregoing.

8. **REMEDIES.**

Upon the occurrence of any Event of Default, and in addition to any other remedies provided under applicable law or equity, the party not in default may, at its option, (1) terminate this Agreement, (2) proceed by any lawful means to enforce performance of this Agreement, and/or (3) sue for damages at law or in equity under this

Agreement or under applicable law. Any such remedies will be cumulative and not exclusive.

9. **OTHER CONTRACTORS.**

So long as this Agreement is in effect and Contractor is not in default hereunder, Railroad agrees it will not allow any other locomotive contractor on the property to perform maintenance or repairs, except as outlined in Section 3(e), to the Locomotives unless it receives written approval by Contractor prior to the commencement of the work.

Contractor shall not employ or engage sub-contractor(s) to perform any work under the terms of this Agreement without first obtaining the written consent of Railroad, which shall not be unreasonably withheld.

10. **REPORTS.**

Periodically, Contractor will provide to Railroad such reports as may from time to time be reasonably necessary or required, or requested by Railroad, in respect to the Maintenance of the Locomotives.

11. **NOTICES.**

Except as otherwise provided herein, any notice required or permitted hereunder will be in writing and will be valid, sufficient and deemed given if delivered personally or dispatched in the United States mail, by registered or certified mail postage prepaid, or sent by any other express mail service receipt of which can be verified, addressed to the other party as follows:

If to Contractor:   Progress Rail Services Corporation
                    Locomotive Division
                    P. O. Box 460
                    6931 Highway 84 East
                    Patterson, Georgia 31557

                    Attention: Jerry Bozeman
                    Phone: (912) 647-2106

If to Railroad:     Georgia Southwestern Railroad, Inc.
                    PO Box 69 – 216 Long Drive
                    Smithville, GA 31787

                    Attn: Terry R. Small, President

Locomotive Maintenance Agreement, Final Version 10/10/02

- 8 -

and any party may change such address by notice given to the other party in the manner set forth above.

12. **OTHER CUSTOMERS.**

It is expressly understood and agreed that nothing herein contained will be construed to prevent or prohibit Contractor from providing the same or similar services to itself for locomotives Contractor owns or to any person or organization not a party to this Agreement. Contractor may own, provide maintenance for, or manage locomotives Contractor owns or manages for any other party, which are similar or dissimilar to the Locomotives. Contractor agrees that the performance of similar services for other customers or itself shall not be done at the inconvenience or in a manner that makes Railroad served in less than an equal treatment from a priority of work. Contractor also acknowledges that it will not use facilities of the Railroad to perform work or services for other customers or itself, without prior permission from the Railroad.

13. **FORCE MAJEURE.**

Neither party will be liable for nonperformance or delay in performance solely and to the extent due to any cause not in its control in the exercise of reasonable and prudent business practices ("Force Majeure"). If affected by Force Majeure, the party claiming the Force Majeure will give notice to other party as promptly as possible of the nature and probable duration of such Force Majeure. If the party claiming Force Majeure is unable to carry out any of its obligations under this Agreement because of Force Majeure, its obligations will be suspended only to the extent made necessary by Force Majeure; and any corresponding obligations of the other party to make payment to the party claiming Force Majeure whether by fixed rate, minimum or otherwise, for services thereby suspended, will be abated. Subject to the foregoing, Force Majeure may include acts of God; legislation or regulations of any governmental body; court decrees; acts of the public enemy; riots; strikes; labor disputes affecting maintenance facilities used or prospectively used by Contractor; fires; explosions; floods; and breakdown of or damage to plants, equipment or facilities. The effect of any act of Force Majeure will be eliminated or mitigated by the party claiming Force Majeure as promptly as possible.

14. **MISCELLANEOUS.**

a) *Successors and Assigns.* The terms and conditions of this Agreement will inure to the benefit of and be binding upon the respective successors and assigns of the parties hereof; <u>provided, however,</u> that Contractor may not without the prior written consent of Railroad, not to be unreasonably withheld, assign by operation of law or otherwise this Agreement or any of its rights or obligations under this Agreement. Any purported assignment by Contractor in violation hereof will be void.

Locomotive Maintenance Agreement, Final Version 10/10/02

      b)    *Headings*. Titles and headings of the Sections and Subsections of this Agreement are for the convenience of reference only and do not form a part of this Agreement and will not in any way affect the interpretation hereof.

      c)    *Amendment*. No modification or amendment to this Agreement will be valid unless in writing and executed by both parties hereto.

      d)    *Waiver*. The waiver of any breach of any term or condition hereof will not be deemed a waiver of any other or subsequent breach, whether of like or different nature.

      e)    *Governing Law*. This Agreement will be governed by the laws of the State of Georgia.

      f)    *Counterparts*. This Agreement may be executed by the parties hereto in any number of counterparts, and all counterparts taken together will be deemed to constitute one instrument.

      g)    *Including*. As used herein, "including" means, without limitation.

      h)    *Entire Agreement*. This Agreement embodies the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings relating to such subject matter.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and year set forth below:

| Georgia Southwestern Railroad, Inc. | Progress Rail Services Corporation |
|---|---|
| By: *[signature]* Terry R. Small | By: *[signature]* |
| Title: President | Title: GM Locomotive |
| Date: 10/15/02 | Date: 10/15/02 |

Locomotive Maintenance Agreement, Final Version 10/10/02

SCHEDULE NO. 1

THIS SCHEDULE NO. 1 ("Schedule") to that certain Maintenance Agreement dated as of March 1, 2002 (the "Agreement") is dated as of March 1, 2002 (the "Effective Date") and is by and between Progress Rail Services Corporation ("Contractor") and Georgia Southwestern Railroad, Inc. ("Railroad").

Railroad and Contractor agree as follows:

1.  The following eight (8) locomotives (each, a "Locomotive") are hereby made subject to the Agreement effective as of the date of this Schedule.

| REPORTING MARK | NUMBER | TYPE LOCOMOTIVE |
|---|---|---|
| GATX | 904 | SD40-2 |
| EMDX | 6346 | SD40-2 |
| GACX | 7365 | SD40-2 |
| EMDX | 6313 | SD40-2 |
| CSO | 2009 | B23-7 |
| CSO | 2013 | B23-7 |
| GSWR | 6302 | FP-9 |
| GSWR | 6308 | FP-9 |

2.  The initial term of this Agreement with respect to the Locomotives on this Schedule shall be for 36 months ending on February 28, 2005. Upon expiration of the initial term or any automatic extension, this Agreement shall be automatically extended for an additional term of twelve (12) months unless notice is given by either party at least sixty (60) days prior to the end of the initial or extended term.

3.  As compensation for the performance of its services during each Month of this Schedule, Railroad will pay Contractor Ninety Two dollars and forty seven cents, ($92.47) per Locomotive per day ("Compensation"). Also included in the definition of Compensation shall be all authorized amounts paid by Contractor on behalf of Railroad. Railroad will reimburse Contractor for all such amounts within thirty days of invoice.

4.  Locomotives described in this Schedule will be covered by the Agreement and this Schedule beginning on the Effective Date.

5.  Except as expressly modified by this Schedule or any other schedule, all terms and provisions of the Agreement apply and will remain in full force and effect with respect to all Locomotives covered by this Schedule.

Locomotive Maintenance Agreement, Final Version 10/10/02

6. This Schedule may be executed by the parties hereto in any number of counterparts, and all counterparts taken together will deemed to constitute one instrument.

Georgia Southwestern Railroad, Inc.

By: *[signature]*

Title: President

Date: 10/15/02

Progress Rail Services Corporation

By: *[signature]*

Title: *[illegible]* Locomotive

Date: 10/15/02

Locomotive Maintenance Agreement, Final Version 10/10/02

- 12 -

# SCHEDULE 2
## To
# GSWRR MAINTENANCE AGREEMENT

Contractor's performance requirements under the terms of the Agreement shall include the following. Any failure by Contractor to perform any of these requirements may result in a breach to the Agreement.

1. Contractor shall have an individual available to the Railroad on a full time basis who is qualified to perform Maintenance as defined in the Agreement.

2. Contractor shall supervise and support its employees who are assigned to perform Maintenance for the Railroad.

3. Railroad shall provide at its cost and expense communication equipment that will enable Contractor's employee(s) assigned to perform Maintenance for the Railroad to be able to communicate with Railroad's main office at Smithville, Georgia, and with Railroad's Operation Manager. Contractor shall be responsible to protect and maintain the communication equipment issued by Railroad to Contractor (or Contractor's representative, employee, agent, etc.), including the cost to replace or repair any issued communication equipment that is stolen, lost, damaged, destroyed, or otherwise unable to be returned to Railroad in substantially the same condition as received, normal wear and tear excepted.

4. Contractor's employee(s) assigned to perform Maintenance for the Railroad will be available for maintenance calls during hours that the Railroad is performing train movement operations. The Contractor's employee(s) will be responsible to advise the Railroad's office or Railroad's Operation Manager of the method of available contact after normal office hours of Monday to Friday 8AM – 4PM.

5. Contractor shall restore to service any "Locomotive" that becomes out of service (except for a Locomotive that incurs Damage) within 72 hours of being notified that it has been placed in a suitable location for repair. Contractor must give "good cause" as to the reason any Locomotive is not returned to service within the 72 hours. Good cause explanation must include a time frame Contractor anticipates that the Locomotive will be returned to service.

Source: DWH
Refresh Date: 02/13/07 4:15:32PM
Excludes Transportation, Mexico, and Intercompany.

## PROGRESS RAIL SERVICES AGING ANALYSIS FOR GEORGIA SOUTHWESTERN DIVISION

Page 1 of 1

**Company: 100  Progress Rail Services Corp.**
**Customer: 070800 GEORGIA SOUTHWESTERN DIVISION**

| Company | Invoice No. | PO Number | Reference | Inv Date | Days OVD | Inv Amount | Adjustments | Balance Due | Current | Past Due 1-30 | Past Due 31-60 | Past Due 61-90 | Past Due Over 90 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 100 | A5G 82375 | | | 12/31/2004 | 744 | 22,500.00 | 809.45 | 21,690.55 | 0.00 | 0.00 | 0.00 | 0.00 | 21,690.55 |
| 100 | A5G 82448 | | | 01/31/2005 | 713 | 22,500.00 | 0.00 | 22,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,500.00 |
| 100 | A5G 82466 | | | 02/16/2005 | 697 | 2,537.60 | 0.00 | 2,537.60 | 0.00 | 0.00 | 0.00 | 0.00 | 2,537.60 |
| 100 | A5G 82478 | | | 02/24/2005 | 689 | 559.00 | 0.00 | 559.00 | 0.00 | 0.00 | 0.00 | 0.00 | 559.00 |
| 100 | A5G 82486 | | | 02/28/2005 | 685 | 22,500.00 | 0.00 | 22,500.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22,500.00 |
| 100 | A5G 82487 | | | 02/28/2005 | 685 | 4,300.00 | 0.00 | 4,300.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,300.00 |
| 100 | A5G 90112 | | | 01/12/2006 | 367 | 3,900.00 | 0.00 | 3,900.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,900.00 |
| 100 | A5G 90113 | | | 01/12/2006 | 367 | 8,150.00 | 0.00 | 8,150.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8,150.00 |
| | | | Totals For Customer: 070800 | | | 86,946.60 | 809.45 | 86,137.15 | 0.00 | 0.00 | 0.00 | 0.00 | 86,137.15 |
| | | | Report Totals: | | | 86,946.60 | 809.45 | 86,137.15 | 0.00 | 0.00 | 0.00 | 0.00 | 86,137.15 |